OPINION OF THE COURT
 

 Per Curiam.
 

 In this dispute over the November 6, 2001 general election for three seats on the City of White Plains Common Council, petitioner Larry Delgado commenced this Election Law article 16 proceeding by order to show cause initially seeking the impoundment of all voting machines and ballots used in the election, and a recount. After the recount, the Westchester County Board of Elections determined that Glen Hockley was the third place finisher, 47 votes ahead of Delgado. On November 15, Delgado moved by order to show cause for new relief, pursuant to Election Law § 16-106, seeking to be declared the winner or, alternatively, a new election. He alleged that a voting machine in the City’s 18th Election District jammed, costing him scores of votes and placing Hockley’s election in doubt.
 

 Hockley moved to dismiss the proceeding, arguing that a quo warranto action, through which the Attorney General challenges an officeholder’s title, was the sole procedure for contesting the results, and that Supreme Court lacked jurisdiction under the Election Law to look behind the canvass and
 
 *423
 
 adjudicate Delgado’s claim of machine error in a summary proceeding. Supreme Court denied the motion to dismiss, sua sponte converted the Election Law proceeding to a declaratory judgment action, and ordered a new election in the 18th District only between Delgado and Hockley. The court also rejected Hockley’s argument that the proceeding should be dismissed because Delgado was required, and failed, to purchase a new index number and file the second order to show cause with accompanying papers before serving them upon respondents. The Appellate Division modified, directing a new City-wide election between Hockley and Delgado. One Justice dissented on the issue of filing and service. We now reverse.
 

 Any action Supreme Court takes with respect to a general election challenge “must find authorization and support in the express provisions of the [Election Law] statute”
 
 (Schieffelin v Komfort,
 
 212 NY 520, 535 [1914] [citation and internal quotation marks omitted];
 
 see also Matter of Hogan v Supreme Ct. of State of N.Y.,
 
 281 NY 572 [1939]). In a summary proceeding under Election Law article 16 respecting the conduct and results of a general election,
 

 “[Supreme Court’s] only powers are (1) to determine the validity of protested, blank or void paper ballots and protested or rejected absentee ballots and to direct a recanvass or correction of any error in the canvass of such ballots * * * and (2) to review the canvass and direct a recanvass or correction of an error or performance of any required duty.by the board of canvassers”
 
 (Matter of Corrigan v Board of Elections of Suffolk County,
 
 38 AD2d 825, 827 [citation omitted],
 
 affd without op
 
 30 NY2d 603 [1972];
 
 see
 
 Election Law § 16-106 [1], [2], [4]).
 
 *
 

 Supreme Court found, and it is not disputed, that a voting machine malfunctioned in the 18th Election District. The effect of that malfunction, however, remains a disputed issue of fact which cannot be resolved merely by recanvassing. Under these circumstances, the proper vehicle for challenging the results
 
 *424
 
 and contesting title to the public office of the purported winner is a quo warranto action, now codified in Executive Law § 63-b (see
 
 People ex rel. McLaughlin v Board of Police Commrs. of City of Yonkers,
 
 174 NY 450 [1903]). The power to commence a quo warranto action is vested in the Attorney General, to be used only after the alleged “usurper” has taken office
 
 (see
 
 Executive Law § 63-b). In exercising this power, the Attorney General performs an investigative and screening function on such challenges
 
 (see Morris v Cahill,
 
 96 AD2d 88, 91 [1983] [op by Levine, J.]), and is presumed to afford a claimant a full opportunity to assert a legal right, if any exists
 
 (see Matter of Gardner,
 
 68 NY 467, 470 [1877]). The exclusivity of quo warranto in these circumstances also avoids the risk of leaving the contested office vacant for possibly a protracted period while the election result is being litigated through the courts to a final conclusion
 
 (see Matter of Hearst v Woelper,
 
 183 NY 274, 284 [1905];
 
 Seavey v Van Hatten,
 
 276 App Div 260, 262 [1949]).
 

 Challenges to the outcome of a general election based upon alleged voting machine malfunctions necessarily fall within the purview of quo warranto. In
 
 Matter of Hogan,
 
 where a voting machine jammed resulting in a possible loss of hundreds of votes for one candidate in a close election, this Court held that under the election statute in place at the time, Supreme Court lacked jurisdiction to extend the summary remedy authorized by the Legislature and receive testimony of electors to establish the number of votes cast for the candidate on the defective machine. Subsequently, in
 
 Matter of Mullen v Heffernan
 
 (298 NY 785 [1948]), this Court reaffirmed the
 
 Hogan
 
 rule regarding the singularity of the quo warranto remedy for challenging general election results based on an allegedly defective voting machine.
 

 Our cases do not support the conclusion of the courts below that a declaratory judgment action is available to challenge title to a public office before the ostensible winner has taken office. Indeed, our cases support the contrary conclusion. In
 
 Mullen,
 
 Supreme Court held
 

 “The remedy for a failure of a voting machine to record votes cast * * * is vested solely in this court in a plenary action brought by the People of the State, at the instance of the candidate who has been injured by the failure of the machine to record the expressions of the voters. * * * [The candidate] has a remedy in quo warranto and it is [the] only
 
 *425
 
 remedy”
 
 (Matter of Mullen v Heffernan,
 
 193 Misc 334, 340 [1948],
 
 affd
 
 274 App Div 972 [1948] [internal quotation marks omitted] [quoting
 
 Matter of Bonacker v Clark,
 
 Sup Ct, Rensselaer County, Mar. 11, 1938, Bergan, J.,
 
 affd
 
 254 App Div 801 (1938)]).
 

 As noted above, this Court affirmed on the ground that Supreme Court lacked jurisdiction under the Election Law to resolve the questions raised concerning voting machine malfunctions
 
 (see
 
 298 NY at 786).
 

 Delgado and Supreme Court below relied on
 
 Matter of Felice v Berger
 
 (182 AD2d 795,
 
 lv denied
 
 79 NY2d 758 [1992]), in which the Appellate Division converted an Election Law article 15 proceeding into a declaratory judgment action, declared the election invalid and ordered a new election because of a defective voting machine. In converting the proceeding, the
 
 Felice
 
 Court, however, relied on dicta from
 
 Matter of Corrigan,
 
 which in turn, relied on dicta from other lower court cases
 
 (see Corrigan,
 
 38 AD2d at 826-827 and cases cited therein).
 

 The only other authority that arguably supports the availability of a declaratory judgment action as an alternative to quo warranto is
 
 Sheils v Flynn
 
 (252 App Div 140 [1937]). In
 
 Sheils,
 
 however, unlike this case, quo warranto was not available because the declared officeholder had died and the aggrieved candidate, who sought to establish the term of the office, had been appointed to fill the vacancy. Irrespectivé of the validity of
 
 Sheils,
 
 the
 
 Corrigan
 
 dicta should not be read as supporting the availability of a declaratory judgment action, commenced before the declared winner has taken office, to resolve a challenge such as the one raised here.
 

 Delgado nonetheless urges that, entirely independent of quo warranto, when there are circumstances such as those presented here, the courts should determine whether the irregularity affected the election process and be empowered to order a new general election. We do not find such authority under the statute
 
 (see by contrast
 
 Election Law § 16-102 [4]) or decisional law. If such authority is to be accorded the courts, it should be by act of the Legislature.
 

 In sum, quo warranto is the appropriate remedy in this case. We need not determine at this time whether a declaratory judgment action might lie as an alternative remedy where quo warranto has ceased to be available to the aggrieved candidate because the Attorney General has declined to act
 
 (see Matter of
 
 
 *426
 

 Dekdebrun v Hardt,
 
 68 AD2d 241, 248 [Cardamone and Simons, JJ., dissenting],
 
 lv dismissed
 
 48 NY2d 608 [1979];
 
 Antisdel v Tioga County Bd. of Elections,
 
 85 Misc 2d 174, 176 [1976]). Nor need we address Hockley’s remaining arguments.
 

 Accordingly, the order of the Appellate Division should be reversed without costs and the petition dismissed.
 

 Chief Judge Kaye and Judges Smith, Levine, Ciparick, Wesley, Rosenblatt and Graffeo concur in per curiam opinion. Order reversed, etc.
 

 *
 

 Within the limited authority afforded under article 16, Supreme Court has jurisdiction over allegations of certain serious irregularities in the conduct of a general election, including allegations of voting machine tampering between a canvass and recanvass (see,
 
 e.g., Matter of Rice v Power,
 
 19 NY2d 474 [1967];
 
 Matter of Stella v O’Rourke,
 
 58 Misc 2d 1041 [1968],
 
 affd on op below
 
 31 AD2d 798 [1969]), and challenges to absentee ballots based on nonresidency (see
 
 Matter of Dorman v Scaringe,
 
 245 AD2d 949 [1997],
 
 lv denied
 
 91 NY2d 813 [1998]).