[767 NYS2d 124]

THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LARRY
DELGADO, Defendant, and GLEN S. HOCKLEY, Appellant.

Second Department, November 17, 2003

### APPEARANCES OF COUNSEL

*Thomas J. Abinanti*, White Plains, for appellant.

*Eliot Spitzer, Attorney General*, New York City (*Marion R. Buchbinder* and *Joel Graber* of counsel), for respondent.

### OPINION OF THE COURT

GOLDSTEIN, J.

At issue here is the statute of limitations applicable to a quo warranto action pursuant to Executive Law § 63-b. We hold that such actions are governed by CPLR 213 (1) which provides for a six-year statute of limitations for "an action for which no limitation is specifically prescribed by law."

The defendants Larry Delgado and Glen S. Hockley were candidates in the November 6, 2001, general election for the public office of member of the City of White Plains Common Council. After the Westchester County Board of Elections reported that Hockley secured 47 more votes than Delgado, Delgado challenged the results in a proceeding pursuant to Election Law article 16, on the ground that a malfunctioning voting machine deprived him of a sufficient number of votes to affect the outcome of the election. The Supreme Court converted the proceeding into an action for a declaratory judgment and directed a new election in the election district served by the malfunctioning voting machine. This Court modified the final order, and directed a city-wide election between Hockley and Delgado (*see Matter of Delgado v Sunderland*, 290 AD2d 440 [2002]).

The Court of Appeals reversed the order of this Court and dismissed the proceeding on the ground that the exclusive remedy was a plenary action in the nature of quo warranto commenced by the attorney general pursuant to Executive Law § 63-b (*see Matter of Delgado v Sunderland*, 97 NY2d 420 [2002]; *Matter of Hanington v Coveney*, 62 NY2d 640 [1984]). Hockley took office on March 15, 2002, one day after the Court of Appeals rendered its decision.

Following an investigation, a three-member panel consisting of two Assistant Attorneys General and one Assistant Solicitor General issued a report dated November 14, 2002, which found that at least 103 votes were cast for Delgado on the malfunctioning voting machine, but only 39 were recorded. Based upon that

finding, the report recommended that a quo warranto action be instituted. The instant action against Hockley and Delgado was commenced on or about December 3, 2002.

Hockley moved to dismiss the complaint on the ground that it was time-barred by the four-month statute of limitations set forth in CPLR 217 (1) for a "proceeding against a body or officer." The Supreme Court denied the motion, holding that a quo warranto action "is a plenary action not subject to the four-month statute of limitations." We affirm.

The common-law remedy of quo warranto is based upon the prerogative of the sovereign against "one who usurped, misused, or failed to exercise some office or franchise" (*Matter of Smith v Dillon,* 267 App Div 39, 41-42 [1943]; *People v Miner,* 2 Lans 396, 398 [1868]). Executive Law § 63-b codified the common-law remedy of quo warranto but failed to specify the applicable statute of limitations. In *Matter of Delgado v Sunderland* (97 NY2d at 424), the Court of Appeals held that "[t]he power to commence a quo warranto action is vested in the Attorney General, to be used only after the alleged 'usurper' has taken office," but did not rule on what constituted the applicable statute of limitations.

Where a statute codifies or implements a common-law cause of action and does not specify a statute of limitations, the statute of limitations for the common-law cause of action applies (*see Gaidon v Guardian Life Ins. Co. of Am.,* 96 NY2d 201, 208 [2001]). In *People v Williamsburgh Turnpike Road & Bridge Co.* (47 NY 586 [1872]) the Court of Appeals outlined the history of the statute of limitations for a quo warranto action. The statute of limitations for a "common relator" was 20 years but "no length of time" would bar an action brought by the attorney general on behalf of the crown (*People v Williamsburgh Turnpike Road & Bridge Co., supra* at 590).

The 1829 Revised Statutes of New York provided that the State was subject to the same statute of limitations as individuals (*see* Rev Stat of NY, part III, ch IV, tit II, § 28 [1st ed 1829]). The Code of Procedure, known as the Field Code, which was originally enacted in 1848 (L 1848, ch 379), reiterated this provision (Code Pro § 98; L 1849, ch 438) and enacted a 10-year statute of limitations for actions for which no specific statute of limitations was otherwise provided (*see* Code Pro § 97). The common-law writs of quo warranto and scire facias were abolished and the Legislature provided that "the remedies, heretofore obtainable in those forms, may be obtained by civil ac-

tions" (Code Pro § 428). The common-law writ of scire facias was somewhat similar to quo warranto in that its purpose was to revoke or annul grants improperly made by the sovereign or forfeited by the grantee (*see People v Miner, supra* at 398).

With the enactment of the CPLR, the so-called residual statute of limitations for actions for which no specific statute of limitations was otherwise provided was shortened from 10 years to six years (*see* CPLR 213 [1]). In *State of New York v Cortelle Corp.* (38 NY2d 83 [1975]), the Court of Appeals applied the six-year statute of limitations set forth in CPLR 213 (1) to an action in the nature of scire facias or quo warranto brought by the Attorney General, inter alia, to dissolve corporations engaged in fraudulent practices.

The four-month statute of limitations now set forth in CPLR 217 (1) was originally enacted in 1880 as part of Code of Civil Procedure, also known as the Throop Code (*see State of New York v Cortelle Corp., supra*). Code of Civil Procedure § 2125 provided that "a writ of certiorari to review a determination [of a body or officer] must be granted and served, within four calendar months after the determination to be reviewed becomes final and binding" (*see* L 1880, ch 178; *People ex rel. Smith v Cooper,* 22 Hun 515 [1880]). That provision was carried over into the Civil Practice Act as section 1288 (*see* L 1920, ch 925).

In 1937, the common-law writs of mandamus and prohibition were abolished (*see* Civ Prac Act § 1283; L 1937, ch 526) and replaced by proceedings pursuant to article 78 of the Civil Practice Act (*see* Civ Prac Act §§ 1284-1306). Civil Practice Act § 1288 was renumbered section 1286 and made applicable to "[a] proceeding under this article to review a determination or to compel performance of a duty specifically enjoined by law."

Historically, the Legislature has treated quo warranto actions as separate and distinct from mandamus and certiorari proceedings (*see* 1880 Code Civ Pro §§ 1983-1990, 2067-2090, 2120-2148; 1920 Civ Prac Act arts 75, 78, 79; 1937 Civ Prac Act arts 75, 78). With the enactment of the CPLR, Civil Practice Act article 78 became CPLR article 78, while the statutory provisions relating to quo warranto were moved to the Executive Law (*see* Executive Law § 63-b). There is no indication that the Legislature ever intended that the four-month statute of limitations should apply to quo warranto actions (*see generally Saratoga County Chamber of Commerce v Pataki,* 100 NY2d 801 [2003]).

Case law indicates that a quo warranto action should be "commenced prior to the expiration of the term of office that is

contested" (*Matter of Duncan v Board of Commrs. of Port Washington Police Dist.*, 207 AD2d 834, 836 [1994]; *see Matter of Garufi v Bennett*, 150 Misc 2d 799, 806 [1991]; *Demarest v Fire Dept. of City of Norwalk*, 76 Conn App 24, 817 A2d 1285 [2003]; *Carleton v Civil Serv. Commn. of City of Bridgeport*, 10 Conn App 209, 216, 522 A2d 825, 828 [1987]). Once the term of office has expired, the controversy is rendered academic, except for ancillary issues. The nature of the controversy, if any, is no longer over who is entitled to the office (*see Goldstein v Kenville*, 124 NYS2d 1 [1953]). Accordingly, we hold that an action in the nature of quo warranto must be commenced within six years of the time that the alleged usurper assumed public office or prior to the expiration of the term of office, whichever occurs first.

Where the petitioner merely seeks a recanvass of the ballots, a proceeding pursuant to Election Law § 16-106, with a statute of limitation shorter than four months (*see* Election Law § 16-106 [5]), is the proper course (*see Matter of Corrigan v Board of Elections of Suffolk County*, 38 AD2d 825, 827 [1972], *affd without op* 30 NY2d 603 [1972]). A proceeding pursuant to Election Law § 16-106 was not available here since the dispute could not be resolved merely by recanvassing the ballots (*see Matter of Delgado v Sunderland*, 97 NY2d at 423).

Under certain circumstances, where only a question of law is involved, title to public office may be determined in a proceeding pursuant to CPLR article 78 in the nature of mandamus governed by a four-month statute of limitations (*see e.g. Ellis v Eaton*, 136 AD2d 890 [1988]; *Matter of Dykeman v Symonds*, 54 AD2d 159, 161 [1976]; *Matter of Cullum v O'Mara*, 43 AD2d 140, 145 [1973], *affd* 33 NY2d 357 [1974]). Mandamus was never available here, since resolution of the instant controversy requires testimony of electors to establish the number of votes cast for the candidate on the defective machine and findings of fact based thereon. As previously noted, the Court of Appeals has already determined that an action in the nature of quo warranto is both the appropriate and the exclusive remedy here (*see Matter of Delgado v Sunderland*, 97 NY2d at 424-425).

The cumbersome nature of the remedy of quo warranto was recognized years ago, when the Legislature authorized commencement by a private person of a summary proceeding to contest a corporate election (*see* General Corporation Law § 27; L 1892, ch 687; Rev Stat of NY, part I, ch XVIII, tit IV, § 5 [1st

ed 1829]) "to give the court power to test in a summary manner the title of corporate officers without resorting to the cumbersome action of quo warranto" (*Matter of Lake Placid Co.,* 274 App Div 205, 207 [1948]). Such summary proceedings were governed by article 78 of the Civil Practice Act (*see Matter of Hoe & Co.,* 14 Misc 2d 500 [1954], *affd* 285 App Div 927 [1955], *affd* 309 NY 719 [1955]). The authorization for such summary proceedings is now incorporated in Business Corporation Law § 619 (*see Matter of Uranian Phalanstery 1st N.Y. Gnostic Lyceum Temple,* 155 AD2d 302 [1989]). A proceeding pursuant to Business Corporation Law § 619 is separate and distinct from an action in the nature of quo warranto brought by the attorney general (*see Matter of Schmidt,* 97 AD2d 244, 249 [1983]).

No such alternative summary proceeding is available to challenge the results of the general election in issue here. The Court of Appeals noted that the exclusivity of the quo warranto action, which may only be commenced after the alleged usurper has taken office, averts "the risk of leaving the contested office vacant for . . . a protracted period" (*Matter of Delgado v Sunderland,* 97 NY2d at 424). Instead, we are faced with a scenario where the contested office has been filled for a protracted period of time by a person who allegedly was never validly elected to the office.

The cumbersome nature of the remedy and the suitability of applying the six-year statute of limitations set forth in CPLR 213 (1) is a question for the Legislature, not the courts. The law with respect to quo warranto actions and the applicable statute of limitations was, for the most part, set in the 19th century or earlier. It is time that the Legislature reexamine these issues in light of 21st century considerations.

In view of the foregoing, the order appealed from is affirmed.

ALTMAN, J.P., ADAMS and MASTRO, JJ., concur.

Ordered that the order is affirmed, with costs.